## CARR v. BRAWLEY.

No. 2031.   Opinion Filed July 18, 1912.

Rehearing Denied August 20, 1912.

(125 Pac. 1131.)

GARNISHMENT—Property Subject—Mortgaged Personalty—Waiver of Mortgage—Consent to Sale.   When the mortgagee of certain cotton gave the mortgagor authority to sell the cotton and deposit the proceeds in a bank in the name of the mortgagor's bondsmen in a suit, and the same was done, the lien of the mortgage was discharged, and the funds, prior to reaching the mortgagee, were subject to garnishment at the instance of a creditor of the mortgagor.

(Syllabus by Brewer, C.)

*Error from District Court, Lincoln County;*
*Roy Hoffman, Judge.*

Action by E. J. Brawley against E. W. Carr. Judgment for plaintiff, and defendant brings error. Reversed.

*Geo. B. Rittenhouse* and *F. A. Rittenhouse,* for plaintiff in error.

*W. L. Johnson,* for defendant in error.

Opinion by BREWER, C.   Brawley was plaintiff below and Carr was defendant. The defendant in error, E. J. Brawley, as plaintiff below, sued plaintiff in error, E. W. Carr, as defendant below, for the alleged conversion of a sum of money, alleged to have been the proceeds of a crop of cotton raised by a man named Wallace, and on which plaintiff held a mortgage.

It seems that Wallace raised some cotton. He gave two mortgages on it. Carr became the owner of the first mortgage by assignment. Brawley owned the second mortgage. Carr sued Wallace in replevin for the cotton under the first mortgage. Wallace defended and needed bondsmen, so as to retain the cotton and finish gathering it. Brawley agreed for Wallace to sell the cotton and deposit the proceeds in a bank in the name of Ward

and Davidson, the bondsmen of Wallace in the replevin suit, to the end that they be held harmless. This was done. Carr prevailed in the replevin suit, and sufficient of the funds in the bank were used to pay Carr's judgment. But it seems Wallace was also indebted to Carr on another matter, a promissory note, in no wise connected with the mortgages. Carr sued Wallace on this note, obtained judgment, and garnished the bank, Ward, and Davidson, impounding the balance of the fund derived from the sale of the cotton crop. Issue was joined on the answers of the garnishees and resulted in an order on the bank to pay $55.68 of the fund into the justice court to apply on Carr's judgment against Wallace. This sum was so paid into court by the bank, where it remained at the time this suit was brought, and at the time of the trial. Brawley was not a party to these proceedings. Under this situation, and while the money was in court, Brawley brought this action in conversion against the justice, the constable, and Carr, the plaintiff. The court sustained a demurrer as to the two officers, but overruled it as to Carr. The case was tried to a jury, who found for Brawley and against Carr in the sum of $92.67, which appears to have been the total balance of the cotton funds in the bank.

It is contended here, first, that there was no demand; second, that Brawley, in consenting that Wallace sell the mortgaged cotton and put the proceeds in the bank, lost the lien under the mortgage, and that the funds were subject to garnishment at the suit of Carr as a creditor.

We shall not discuss the question of demand, as our views on the second proposition render the same unnecessary.

The second proposition, we think, requires a reversal of the case. The mortgagee gave authority to the mortgagor to sell the cotton and make use of the proceeds, at least temporarily, for his own purposes. He used a portion of the proceeds in discharging a judgment against himself. The remainder was deposited as a general deposit in the bank in the name of Ward and Davidson. Had the mortgagee required them to be deposited in her name, after being so deposited, she would have been safe. This course was not pursued.

That there was a waiver of the lien of the mortgage as a result of the mortgagee's consent to the sale is elementary. *Mortgage Security Co. v. Elevator Co.*, 6 N. D. 412, 71 N. W. 130; *Drexel v. Murphy*, 59 Neb. 210, 80 N. W. 813; *Frick Co. v. Milling Co.*, 51 Kan. 370, 32 Pac. 1103; *Partridge v. M. D. Elevator Co.*, 75 Minn. 496, 78 N. W. 85; Cobbey on Chattel Mortgages, sec. 636; Jones on Chattel Mortgages (5th Ed.) sec. 465; Hammon on Chattel Mortgages, p. 142.

The lien of the mortgage does not follow the proceeds of a sale of the mortgaged property, where the mortgagee consented to the sale. The case of *Maier v. Freeman*, 112 Cal. 8, 44 Pac. 357, 53 Am. St. Rep..151, is a case very much in point. In the syllabus it is said:

"If a mortgagee of chattels authorized the mortgagor, as his agent, to sell the mortgaged property, and to deposit the proceeds in a bank, to be applied on the mortgage debt, and a sale is made under such authorization, the lien of the mortgage does not attach to the proceeds, and they are subject to attachment by the other creditors of the mortgagor. Neither a trust nor an equitable assignment is created in favor of a mortgagee of chattels on the proceeds of their sale when he authorized the mortgagor to sell them, to collect the proceeds of the sale, and to deposit them in a bank, to be applied on the mortgage debt."

In the opinion it is said:

"There are many decisions that the mortgagee of chattels may authorize the mortgagor to sell the incumbered property and apply the proceeds of sale upon the debt secured, and that such an agreement does not render the mortgage fraudulent in law, nor affect the lien thereof prior to the sale (*Brackett v. Harvey*, 91 N. Y. 221; *Murray v. McNealy*, 86 Ala. 234 [5 South. 565], 11 Am. St. Rep. 33; *Lane v. Starr*, 1 S. D. 107 [45 N. W. 212], and cases cited); but we have found no case in which the lien was held to attach to the proceeds unpaid by the purchaser. The doctrine of the case of [*White Mountain Bank v. West*], 46 Me. 15, above cited, is that if the mortgagee 'wished to reach the proceeds in the hands of the purchasers he, like other creditors, should have resorted to a trustee process under the statute.'"

In the case of *White Mountain Bank v. West et al.*, 46 Me. 20, in the course of the opinion it is said:

"If West had the right to sell the lumber, then he could give a good title. His stipulation that the avails should be paid over

to Carleton was personal only; and any default on his part in this respect could not affect the title of his vendee. Nor did this consent for him to sell make him an agent of Carleton for that purpose. It was a release of the mortgage claim, in case of a sale. The effect of a mortgage with such consent for the mortgagor to sell was to hold the property for the mortgagee against attaching creditors; but from the time of sale the lien of the mortgagee was extinguished, and the mortgagee was left with no security but the personal promise of the mortgagor to pay the proceeds to him. And if he wished to reach the proceeds in the hands of the purchasers he, like other creditors, should have resorted to a trustee process under the statute."

See, also, *Waters v. Bank*, 65 Iowa, 234, 21 N. W. 582.

If the sale of the mortgaged property in this case had been without consent, and the proceeds could be traced, the party appropriating same having notice of the mortgage, quite a different question would be presented.

We conclude that the plaintiff below, in consenting to the sale of the mortgaged property, waived the lien of the mortgage, and that she had no lien on the proceeds, and that therefore the same were subject to the process sued out by the creditor.

It follows that the cause should be reversed.

By the Court: It is so ordered.