## W. J. NEAL *et al.* v. STATE.

No. A-2648.   Opinion Filed October 20, 1917.

(168 Pac. 247.)

1. **CHATTEL MORTGAGES—Disposition of Mortgaged Property—Criminal Offense—Defenses.** In the trial of a person charged with unlawfully disposing of mortgaged property, he is entitled to plead as a defense the fact that the property covered by the indictment or information was disposed of according to law and the proceeds applied in the liquidation of a prior mortgage debt.

2. **SAME—Second Mortgage—Interests of Mortgagees—Consent of Second Mortgagee to Sale.** The rights of the first lienholder under a mortgage on chattel property are paramount, and all that the second mortgagee is entitled to under the law is the equity remaining after the first mortgage debt is paid. The law, of course, contemplates that a sale under the first mortgage shall comply with the law, and that no fraud be perpetrated on the rights of the second mortgagee. His written consent, however, to a sale and disbursement of the funds in liquidation of the first mortgage debt, is not required.

*Appeal from District Court, Greer County;*
*R. W. Higgins, Assigned Judge.*

W. J. Neal and B. E. Neal were convicted of unlawfully disposing of mortgaged property, and they appeal. Reversed and remanded, with direction to grant a new trial.

*Frank Eagin,* for plaintiffs in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   W. J. Neal and B. E. Neal were convicted in the district court of Greer county at the August, 1915, term, on a charge of unlawfully disposing of mortgaged property, and their punishment fixed at a fine of $250 each.

The information charges the plaintiffs in error with having sold four bales of cotton during the season of 1914, which had been mortgaged on the 17th day of January, 1914, to the First State Bank of Mangum, and that the said sale was made without the written consent of the said First State Bank of Mangum or its proper officers. At the trial of the case the plaintiff in error W. J. Neal testified that he did not raise any cotton during the year 1914; that he planted a crop twice, but pests destroyed it each time.

The state introduced a number of cotton tickets issued by a ginner in Greer county showing that 17 bales of cotton had been ginned in the name of W. J. Neal. This witness offered an explanation of that feature of the case by stating that all the cotton raised on the premises by him and his sons, who had separate crops, was ginned in his name, for the purpose of keeping the record clear for settling up with his landlord, whom he contended was a contentious person and hard to deal with. B. E. Neal offered to testify that the particular cotton alleged to have been

sold in violation of the mortgage was raised by him, and that the sale was made and the proceeds applied on a mortgage he had given on a prior occasion, to wit, on December 13th, to H. H. Lyton, which covered the particular four bales sold and formed the basis of the prosecution, and offered the mortgage in evidence. The court declined to receive this mortgage in evidence, and to permit the plaintiff in error B. F. Neal to establish as a defense the proposition that the cotton was sold and the proceeds applied to the payment of a first mortgage debt. The court, in his ruling on the proposition, stated that under the law, as he understood it, a person who had given both a first and second mortgage could not sell cotton and apply the proceeds of the sale to the first mortgage without the written consent of the second mortgagee, and upon this ground excluded the evidence in question. W. J. Neal attempted to plead as a defense on his behalf that he raised no cotton as above stated, and, further, that he did not owe the First State Bank of Mangum anything on account of the fact that he had paid all the debt except the usurious interest which the said bank had charged him on the amount they claimed.

The ruling of the trial court in refusing to admit the evidence tending to show the existence of a prior mortgage, and that the proceeds of the cotton sold were applied in liquidation of that obligation, on the ground that the written consent of the second mortgagee would have to be secured before such sale and application of the funds could be made, is fundamentally wrong. Following to its natural conclusion the argument that the written consent of the second mortgagee had to be secured before a sale could be made, the rights of the first mortgagee would be destroyed. Such is not the law. The second mortgagee had rights only

after the first mortgage had been paid in full, and not until then. So if the cotton was sold at a fair market price and the proceeds fully accounted for by application upon the note due to the said first mortgagee, then no crime was committed. It was therefore the duty of the court to permit proper proof of the facts in this connection and submit the same to the jury with correct instructions, so that the jury might determine this issue.

The rights of the second mortgagee could be protected under the statute in two ways: First. An equity in all the property covered by the second mortgage which was also covered by the first mortgage, after the liquidation of the first mortgage, would go to him and he would be entitled to receive the proceeds of the cotton sold over and above the amount required to liquidate the first mortgage. Second. The second mortgagee also had the right, in the event he desired to do so, to pay off the first mortgage debt and thereby become the first lienholder against all the property in question, in which event the view of the law by the trial court would be correct, but not otherwise. The plaintiffs in error having testified that the four bales of cotton involved in this prosecution were sold and the proceeds applied on the payment of the first mortgage debt, and nobody having testified or contended to the contrary, this case is left in such condition that the judgment of conviction cannot be upheld.

There is evidence in the record that some 17 bales of cotton were raised on the premises, but this prosecution involved only four bales, and plaintiffs in error offered to account for the disposition of the particular four bales, and since the proof offered on behalf of the plaintiffs in error would disclose that the proceeds of their sale were applied

to the liquidation of the debt secured by a prior mortgage, it became vital to their defense that they be allowed to introduce the prior mortgage and the facts surrounding the execution of the same, and show the disposition of the property charged to have been unlawfully and fraudulently disposed of, and such evidence should have been allowed to go to the jury under proper instructions.

The judgment is reversed, and the cause remanded, with directions to grant a new trial.

DOYLE, P. J., and MATSON, J., concur.