## J. W. THOMPSON v. STATE.

No. A-3000. Opinion Filed Nov. 25, 1921.

(201 Pac. 1004.)

(Syllabus.)

Chattel Mortgages — Private Sale of Chattels by Assignee of First Mortgage, not Punishable. Where there is a first and a second chattel mortgage, of record, covering the same property, and where the assignee of the first mortgage, by agreement with the mortgagor, authorizes and directs the sale of the mortgaged property at private sale, neither the assignee nor the mortgagor, acting for the assignee, will be punishable for the illegal disposition of mortgaged property under the provisions of section 2755, R. L. 1910, where it appears that there was no intention by either to defraud the holder of the second mortgage, and where the second mortgagee in fact suffered no harm by such informal foreclosure.

Appeal from District Court, Love County; W. F. Freeman, Judge.

J. W. Thompson was convicted of disposing of mortgaged property, and he appeals. Reversed and remanded.

G. V. Pardue, for plaintiff in error.

S. P. Freeling, Atty. Gen., and R. McMillan, Asst. Atty. Gen., for the State.

BESSEY, J.   An information was filed in the district court of Love county on November 3, 1916, charging J. W. Thompson, plaintiff in error, herein referred to as the defendant, with having on or about the 1st day of January, 1916, unlawfully, willfully, purposely, and feloniously sold and disposed of mortgaged property.   On this charge the defendant was tried and found guilty, and his punishment fixed at a fine of $100 and costs, amounting to $63.40.

The record discloses that the defendant, on February 3, 1914, executed a chattel mortgage in favor of James D. Freeman of the amount of $500, covering three head of horses, six head of cattle, and their increase, together with a growing crop and some farm implements; afterwards, on the same day, the defendant executed another chattel mortgage of the amount of $176.45, covering the same property, to J. W. Scanlan, and that J. W. Scanlan had actual and constructive notice of the prior mortgage executed in favor of Freeman.

On January 13, 1915, Mrs. T. C. Thompson, wife of the defendant, out of her own personal, separate estate, purchased the notes given by her husband to Freeman, and took an assignment of the notes and the mortgage securing the same. That soon after, as assignee of the mortgagee, Freeman, she took charge of the property covered by the mortgage, and at various times during the year 1915 she, by agreement with her

husband and with his consent and assistance, sold portions of this property from time to time to various individuals, without the consent of J. W. Scanlan, holder of the second mortgage. There is evidence tending to show that the aggregate amount Mrs. Thompson received from these several sales was insufficient to satisfy the first mortgage, and from this fact it may be inferred that the holder of the second mortgage was not injured by this informal method of foreclosure. Under the circumstances there appeared to be no willful, felonious intent on the part of Mrs. Thompson and the defendant to defraud any one. Whether the property would have sold at public sale for more than enough to satisfy the first mortgage is of course a matter of speculation.

The state's testimony in chief, in our opinion, was not sufficient to warrant a conviction, for the reason that the evidence tending to show that certain portions of the property were sold was vague and indefinite as to the identity of the property; indefinite as to the time when sold, and as to whether or not the defendant had anything to do with the sales. At the close of the state's testimony the defendant demurred to the evidence, which amounted to a request for an instructed verdict in favor of the defendant. This demurrer was overruled. The defendant then introduced his testimony, in which he testified that in February, 1915, his wife had purchased the Freeman mortgage, and Mrs. Thompson admitted that she authorized her husband, the defendant, to dispose of some of the property at private sale from time to time during the year 1915, and that she herself disposed of other portions of it, with full knowledge that the Scanlan mortgage was in full force and effect and unsatisfied.

Section 2755, R. L. 1910, under which this prosecution was brought, is as follows:

"Any mortgagor of personal property, or his legal representative, who, while such mortgage remains in force and unsatisfied, conceals, sells, or in any manner disposes of such property, or any part thereof, or removes such property, or any portion thereof, beyond the limits of the county, or materially injures or willfully destroys such property, or any part thereof, without the written consent of the holder of such mortgage, shall be deemed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding three years or in the county jail not exceeding one year, or by a fine not to exceed one hundred dollars: Provided, that the writing containing the consent of the holder of the mortgage, as before specified, shall be the only competent evidence of such consent, unless it appear that such writing has been lost or destroyed."

Where the written provisions of a contract are for the protection or exclusive benefit of one of the parties to a contract, that party may usually waive such provisions, orally or by conduct indicative of a waiver. A parol consent operates as a waiver even in the face of a provision in a mortgage requiring written consent. It has been held in many cases that the same rule applies where a statute makes it an offense to sell or dispose of mortgaged property without the written consent of the mortgagee. Carr v. Brawley, 34 Okla. 500, 125 Pac. 1131; 43 L. R. A. (N. S.) 302, and notes, pages 306 and 307, citing numerous cases.

We cannot see how any of the parties to a contract, where the state is not interested and no third person is aggrieved, could be punished criminally for mutually waiving a written covenant in a contract. It would amount to an absurdity to say that an act done according to method prescribed by civil procedure might amount to a punishable offense under the Criminal Code.

By the provisions of our statutes and decisions of our courts there are four ways in which a mortgagee may foreclose a chattel mortgage; to wit: (1) By suit in equity brought

for that purpose. (2) in the manner and upon the notice prescribed for the sale of pledged property. (3) Upon notice as prescribed by section 4027, R. L. 1910. (4) By private sale by the mortgagee where the notice and manner of sale, as prescribed by statute or as prescribed in the power of sale contained in the mortgage is waived. Sections 4026 and 4027, R. L. 1910; First National Bank of Ardmore v. Dougherty, 31 Okla. 179, 120 Pac. 656, Ann. Cas. 1913D, 411.

It appears conclusively from this record that Mrs. Thompson, for an adequate and valid consideration, succeeded to all the rights of Freeman, the original first mortgagee. Our statute makes no provision for filing or recording an assignment of chattel mortgage. In the absence of a statute requiring it in express terms or by necessary implication, it is not necessary for the assignee to record the assignment in order to protect his rights. Wills v. Fuller, 47 Okla. 720, 150 Pac. 693; First National Bank v. National Livestock Bank, 13 Okla. 719, 76 Pac. 130; 11 C. J. 664. From this it will be seen that Mrs. Thompson, assignee, had a right to take charge of the mortgaged property and foreclose the mortgage by any method and in the same manner that Freeman might have done prior to the assignment; and so long as such foreclosure is conducted fairly, without any intent to defraud and without in fact defrauding the holder of the second mortgage, such holder of a second mortgage has no cause for complaint.

Under the facts disclosed by this record, the defendant did not dispose of this mortgaged property—the disposition was made by Mrs. Thompson, assignee of the first mortgage, with the consent of the mortgagor, the defendant here. The fact that the mortgagor and the assignee of the mortgage were husband and wife does not alter the situation, except that their conduct will be more closely scrutinized where the rights of third persons may be involved. Viewing all the circumstances

together, it does not appear that it was the intention of either the mortgagor or the assignee to defraud the holder of the second mortgage nor that the rights of the holder of the second mortgage were in fact impaired.

Upon the question of whether it was the intention of the mortgagor to defraud the holder of the second mortgage, and whether as a matter of fact the mortgagee in the second mortgagee was defrauded, this court, in the case of Watson v. State, 11 Okla. Cr. 542, 149 Pac. 926, said:

"We are inclined to the view that it must have been the purpose of the Legislature to provide a statute which would give the mortgagee adequate and ample protection against fraud, annoyance, and unnecessary expense, and that therefore the intention of this act was to penalize any mortgagor who removed his property from one county to another, * * * and who by such removal either defrauded the mortgagee or intended to defraud him. In our judgment, the purpose of this law is accomplished when it is given this construction. Under this view any mortgagor who removes mortgaged property, as prohibited, with the intent to defraud the mortgagee, would be guilty of a violation of the statute; or, if such mortgagor voluntarily removes such property and by reason of such removal fraud is actually perpetrated on the mortgagee, whether such fraud was conceived before the removal occurred or afterward, or whether such fraud was intended or not, such an act would be punishable as provided. It can hardly be said that a person should be sent to the penitentiary, deprived of his citizenship, and branded as a felon for the remainder of his life, who has done no act which injured any one and has done no act which was intended to injure any one."

Applying the doctrine announced in the Watson Case just quoted and keeping in mind the fact that Mrs. Thompson, assignee, and not the defendant, disposed of this property, so far as this record shows, fairly and for an adequate consideration, the defendant would be guilty of no crime in as-

sisting his wife, the assignee of the first mortgage, in foreclosing the mortgage in the manner disclosed in this record.

The judgment of the trial court is therefore reversed and remanded.

DOYLE, P. J., and MATSON, J., concur.