## GARRET MAYS v. STATE.

No. A-5074.   Opinion Filed Jan. 16, 1926.
(242 Pac. 580.)

Wilkinson & Saye, for plaintiff in error.

The Attorney General and V. P. Crowe, Asst. Atty. Gen., for the State.

BESSEY, P. J.   The plaintiff in error, Garret Mays, here referred to as the defendant, was engaged in the stock business on a large scale, near Ryan, Okla.   For a number of years he raised, pastured, bought, and sold cattle; the financial features of the business being handled chiefly by the People's Bank & Trust Company, of Ryan, of which bank M. H. Barnett was president.   During this period of years, the defendant, from time to time, executed some 30 or 40 notes and mortgages in favor of this bank, and maintained a checking account there.   He was in the habit of buying and selling cattle, feed, and pasture at will, and this bank, to a large extent, was his bookkeeper and general fiscal agent.

Among other things, the bank permitted the defendant to sell cattle under mortgage to the bank at will, and turn in the proceeds of such sales to the bank to be applied on obligations there, sometimes reserving portions of such proceeds to take care of running expenses. In the transaction here at issue the defendant sold 27 head of cattle branded "V" and directed the proceeds to be applied on an obligation to another bank. After the defendant's notes and accounts, renewals, and partial payments with the People's Bank & Trust Company had become involved and confused, these old friends quarreled and disagreed, and in the course of efforts to make a final adjustment the president of the bank instituted this prosecution against the defendant, and also commenced a civil action to recover the proceeds of the sale of these 27 head of cattle from the other bank. This civil suit was decided adversely to the claims of the prosecuting witness.

The statute under which this prosecution was brought (section 2215, Comp. Stat. 1921) reads as follows:

"Any mortgagor of personal property, or his legal representative, who, while such mortgage remains in force and unsatisfied, conceals, sells, or in any manner disposes of such property, or any part thereof, * * * without the written consent of the holder of such mortgage, shall be deemed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding three years or in the county jail not exceeding one year, or by a fine of not to exceed five hundred dollars; Provided, that the writing containing the consent of the holder of the mortgage, as before specified, shall be the only competent evidence of such consent, unless it appear that such writing has been lost or destroyed."

A strict construction of a statutory crime of this nature must sometimes yield to a common sense construction

of its manifest purpose. There may be cases where a written notice is waived and where the fraud charged must be shown to be actual and not merely constructive. Watson v. State, 11 Okla. Cr. 542, 149 P. 926; Thompson v. State, 20 Okla. Cr. 211, 201 P. 1004; Weitz v. State, 24 Okla. Cr. 56, 215 P. 962.

It is probably beyond the power of the Legislature to provide that one should be branded as a felon where the wrong complained of was invited by the person injured. Watson v. State, supra.

We find no flagrant, outstanding errors on the part of the trial court. It does seem, however, that the court unduly limited the defendant in showing fully that the defendant had tacit permission from the prosecuting witness to sell these particular cattle.

Instruction No. 6 was as follows:

"You are instructed, gentlemen of the jury, that under the law of this state, even though the mortgage may contain a written provision providing that the mortgaged property may not be sold without the written consent of the mortgagee, such provision may be waived, and the mortgagee may consent orally to the sale of said cattle, or he may consent by a course of conduct indicative of an intention to waive such provision, provided there is no intention on the part of said mortgagor to defraud said mortgagee *and that no fraud actually occurred, irrespective of the intention of the parties.*

"And you are instructed, gentlemen of the jury, that even though the mortgage offered in this case may contain the provision providing that the cattle could be sold only on the written consent of the People's Bank & Trust Company, yet if you further believe that the president or managing officer of said bank had consented to the sale of said cattle or permitted the mortgagor to sell said cattle for a period of time without protest, then such conduct upon the part of the mortgagee would constitute a waiver of said provision, provided there was no intention on the part of the mortgagor in selling said cattle to perpetrate

a fraud upon the mortgage and *provided further that no fraud actually occurred by which the mortgagee was defrauded of or prevented from receiving the proceeds of such cattle so sold."*

Under the circumstances in this case, we think that the provisos to the instruction above, italicized, ignored the fact that the person injured may have invited the injury, and that the defendant may not have been actuated by any felonious intent.

This seems to have been an attempt to force a monetary settlement by means of a criminal prosecution, a procedure not favored by the courts.

This court, in Watson v. State, supra, in construing the statute making it a felony to remove or dispose of mortgaged property, said:

"The intention of this act was to penalize any mortgagor who removed his property from one county to another in this state, and who, by such removal, either defrauded the mortgagee or intended to defraud him."

This declaration in the Watson Case probably caused the trial court herein to modify and limit instruction No. 6 as appears in the provisos, but in this case we are of the opinion that the limitation should have extended only to actual fraud with criminal intent, and, under the peculiar circumstances of the case, should have excluded constructive fraud.

To construe this statute strictly would enable a mortgagee to ambush a mortgagor and send him to the penitentiary in instances where the mortgagor, in good faith, did what the mortgagee permitted, or even encouraged, him to do.

This is a long record, with much detail involving conflicting evidence about cattle brands, uncertain payments, credits, and disbursements, a lucid analysis of which would be difficult and unprofitable.

The judgment of the trial court is reversed.

DOYLE and EDWARDS, JJ., concur.