## MILLER v. STATE.

No. A-11340.   June 14, 1951.

Rehearing Denied August 1, 1951.

Application to File Second Petition for Rehearing, Denied September 12, 1951.

(232 P. 2d 651.)

Rutherford H. Brett, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, J.  The defendant, M. D. Miller, was charged by an information filed in the district court of Pontotoc county with the crime of selling mortgaged property without the written consent of the mortgagee; was tried; convicted; and sentenced to serve three years in the State Penitentiary; and has appealed.

The determination of this appeal rests principally upon the first proposition presented by the defendant in his brief, to wit: The evidence was insufficient to sustain the conviction.  In this connection defendant contends that the evidence of the state showed that the mortgagee gave verbal consent for sale of the mortgaged chattels, which consent was in conformity to a course of dealing over a period of several months, and in such case an actual intent to defraud the mortgagee must be shown to sustain a conviction for sale of the mortgaged chattels without written consent.

The prosecuting witness was Doctor M. B. Yarbro, an optometrist, who was practicing his profession at Ada, Oklahoma.  Doctor Yarbro first met the de-

fendant in August, 1948, when the defendant, his wife and his step-daughter came to the doctor to have their eyes examined. Several trips were made to the doctor's office and the parties became quite friendly. Marilyn Spaulding, another step-daughter of defendant, was employed in the doctor's office. About two or three weeks after the defendant and Doctor Yarbro became acquainted the defendant told the doctor of a plan of his to open a used car business in the city of Ada. During this conversation the defendant explained to the doctor that he had had considerable experience in the used car business and that he knew where he could purchase second-hand automobiles in the northern and eastern part of the United States and bring them to Oklahoma where they could be sold for a nice profit.

The doctor and his wife through their joint efforts had accumulated about $40,000, which they had deposited in the bank or had invested in a finance company where it was paying them about 4 per cent interest. The defendant had two or three conversations with Doctor Yarbro and impressed the doctor, that he had a good proposition for making money and if the doctor would withdraw his savings from the finance company and from the bank that he could guarantee him at least a 10 per cent interest rate on his money instead of the 4 per cent which he was receiving from the Witherspoon Finance Company.

The defendant organized the Diamond Auto Mart, Inc., and Winifred Miller, wife of the defendant, was named president of the company and Jack A. Spaulding, the step-son of defendant, was named the secretary. The defendant transacted all of the business and represented himself as being the general manager of the business. Doctor Yarbro was not an officer of the company and held no stock in the corporation.

On September 18, 1948, after the doctor had become convinced by the defendant of the success of his business scheme, he withdrew $10,000 which he had on deposit with the Witherspoon Finance Company of Ada and loaned the money to defendant. At that time defendant and his wife gave an unsecured note to the doctor in the sum of $10,000 which bore interest at the rate of 10 per cent per annum from the date of execution. From time to time until November, 1948, Yarbro made advances of money to the defendant which totaled $34,971. The last advance made by Yarbro to the defendant was on November 24, 1948. In addition the doctor signed notes with the defendant at the Oklahoma State Bank at Ada for several thousand dollars. These notes at the bank were secured by mortgages on automobiles purchased by the defendant and were paid by the defendant.

After this considerable amount of money had been loaned to the defendant by the doctor and no payments of the loan having been made, the doctor became suspicious of the defendant and commenced an effort to get the defendant to execute a note and a mortgage on cars which the defendant claimed to have in his possession to secure the unpaid balance due to the doctor. The defendant took Doctor Yarbro and his wife on a trip to several used car lots in Oklahoma City and told him that the used car market was off but pointed out cars that belonged to him and insisted that he still had a great number of cars on these used car lots. It developed in the evidence that this representation by defendant was false. At the insistence of the doctor the defendant, together with the Diamond Auto Mart, Inc., executed a note on March 19, 1949, for $28,000, which represented the unpaid balance then owing to the doctor except the sum of $971. At that time the defendant gave the doctor a chattel mortgage of 21 automobiles which he allegedly owned and had in his possession.

At the trial it developed that 17 of the automobiles listed in the chattel mortgage had been sold by the defendant in January, 1949, prior to the time the mortgage was executed and prior to the time defendant had driven the doctor over Oklahoma City and pointed out cars he allegedly owned. There was no evidence at all as to three of the automobiles named in the mortgage, and the conviction, if it is to be sustained, rests entirely upon the sale of a 1949 Ford automobile which occurred a day or two after the mortgage was executed.

Doctor Yarbro and his wife testified for the state, together with several used car dealers at Oklahoma City who had purchased 17 of the automobiles from defendant in January, 1949.

No evidence was offered on behalf of the defendant. Counsel for defendant concede that the proof of the state showed that no written consent of the mortgagee was given to authorize the sale of the Ford automobile; but it is contended that by reason of the course of dealing over a period of several weeks it showed that there was a verbal agreement between the parties whereby the mortgagor was permitted to sell the cars which came into his possession.

This was the only chattel mortgage executed by the defendant to Doctor Yarbro and, of course, unless there had been a course of conduct whereby Doctor Yarbro had permitted the defendant to sell automobiles which were mortgaged to the doctor over a period of time, it could not be said that there had been an implied consent to the sale. But aside from the question as to whether there was an implied consent to the sale such as to constitute a waiver of the provision in the chattel mortgage, which stated that the chattels could not be sold without the written consent of the mortgagee, we think the testimony of the doctor showed at least a tacit agreement on his part to the defendant making a sale of the chattels with the understanding that when each sale was made $1,000 was to be paid to the doctor to be credited on the note. In this connection the doctor testified that he learned that defendant had sold the Ford automobile mentioned in the chattel mortgage a day or so after the mortgage was executed and that he went to see the defendant about such purported sale. The doctor testified that when he went to the defendant he, the doctor, "reminded him of the fact that he promised to pay a thousand dollars for each car sold".

This prosecution was instituted under the provisions of Tit. 21, O. S. 1941 § 1834, which reads:

"Any mortgagor of personal property, or his legal representative, who, while such mortgage remains in force and unsatisfied, conceals, sells, or in any manner disposes of such property, or any part thereof, or removes such property, or any part thereof, beyond the limits of the county, or materially injures or wilfully destroys such property, or any part thereof, without the written consent of the holder of such mortgage, shall be deemed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding three years or in the county jail not exceeding one year, or by a fine of not to exceed five hundred dollars: Provided, that the writing containing the consent of the holder of the mortgage, as before specified, shall be the only competent evidence of such consent, unless it appear that such writing has been lost or destroyed."

In construing this statute this court has held that it was enacted for the purpose of protecting mortgagees from fraud, annoyance and expense, and was intended only to give such mortgagees fair protection without imposing unnecessary, harmful and burdensome restrictions upon mortgagor; and a chattel mortgagor is guilty under this section if he intended to defraud the mortgagee, or the sale or removal of the mortgaged goods had such result. Watson v. State, 11 Okla. Cr. 542, 149 P. 926.

In Thompson v. State, 20 Okla. Cr. 211, 201 P. 1004, 1005, this court said:

"Where the written provisions of a contract are for the protection or exclusive benefit of one of the parties to a contract, that party may usually waive such provisions, orally or by conduct indicative of a waiver. A parol consent operates as a waiver even in the face of a provision in a mortgage requiring written consent. It has been held in many cases that the same rule applies where a statute makes it an offense to sell or dispose of mortgaged property without the written consent of the mortgagee. Carr v. Brawley, 34 Okla. 500, 125 P. 1131, 43 L. R. A., N. S., 302, and notes, pages 306 and 307, citing numerous cases."

In Mays v. State, 33 Okla. Cr. 185, 342 P. 580, this court stated:

"Where a prosecution for the illegal sale of personal property under mortgage is instituted in aid of the adjustment of a civil liability, and the evidence shows that the mortgagor had tacit authority from the mortgagee to sell the property, but no written authority as stipulated in the mortgage, an actual intent to defraud must be shown to sustain a conviction, as distinguished from constructive fraud.

"(a) Actual intent to defraud must be shown, where an injury results from a waiver of a right invited by the person injured."

At the conclusion of the trial the defendant presented a requested instruction which was given by the court. This instruction is as follows:

"You are further instructed that under the law of this state, even though the mortgage may contain a written provision providing that the mortgaged property may not be sold without the written consent of the mortgagee, such provision may be waived and the mortgagee may consent orally to the sale of the cars described in this mortgage, or, he may consent by a course of conduct indicating an intention to waive such provision providing there was no intention on the part of said Maurice D. Miller to defraud said Dr. Yarbro and that no actual fraud occurred.

"And you are instructed, gentlemen of the jury, that even though the mortgage offered in this case may contain the provision that the automobiles could be sold only on the written consent of Dr. Yarbro, yet if you find that Dr. Yarbro had consented to the sale of said automobiles, or had permitted M. D. Miller to sell said cars for a period of time without protest, then such conduct upon the part of Dr. Yarbro would be considered a waiver of said provision provided there was no intention on the part of M. D. Miller in selling said cars to perpetrate a fraud upon the said Dr. Yarbro, and provided further that no actual fraud occurred by which Dr. Yarbro was defrauded or prevented from receiving the proceeds of such cars so sold."

This instruction was evidently prepared in conformity to the approved instruction set forth in Mays v. State, supra, and is a correct statement of the law.

Since it is apparent from the testimony of Yarbro that he impliedly consented to the sale of the automobile by the accused provided he turn the money to the extent of $1,000 to Yarbro, the only question left for determination is whether the defendant intended to defraud Yarbro or that fraud actually resulted from the sale.

The doctor testified that the defendant paid him nothing from the proceeds of the sale of the Ford automobile, and in fact paid him nothing at all on the $28,000 note. The doctor testified that the defendant told him, when the doctor demanded the money which he had received from the sale of the Ford automobile, that he only received a part of the sale price in cash and the balance was represented by an old car that was taken in on the trade. However, neither the cash which was received by defendant nor the old car which was allegedly

received in a trade were delivered to Yarbro. The jury had a right to conclude, and the only reasonable conclusion they could reach from the evidence, was that the defendant actually defrauded the doctor in this one transaction involving the Ford automobile of at least $1,000, and this was sufficient to sustain the verdict.

In discussing the point of law involved, by way of analogy it may be pointed out that if a farmer had given a mortgage upon a growing crop but had taken the crop and sold it and immediately deposited with the mortgagee all of the money received from the sale, that in such a case the farmer could not be prosecuted for selling without the written consent of the mortgagee, because there was no intent to defraud on the part of the mortgagor and no fraud actually occurred, because the mortgagee received all of the money paid to the mortgagor on account of the sale of the chattels. Applying such an analogy to the facts in this case, it is clear that where the defendant as mortgagor, relying upon verbal consent of the mortgagee, has made a sale of one of the chattels named in the mortgage, he was under legal obligation in order to avoid prosecution to immediately pay to the mortgagee the amount received from the sale of the chattel. Otherwise, mortgagee is defrauded in an amount which mortgagor receives from the sale.

It is next contended that the trial court committed error when it permitted a special prosecutor to read the information over the objection of the defendant, and further that there was error in that the special prosecutor did not state the plea of the defendant to the jury.

Title 22, O.S. 1941 § 831 provides:

"The jury having been impaneled and sworn, the trial must proceed in the following order:

"1. If the indictment or information is for a felony, the clerk or county attorney must read it, and state the plea of the defendant to the jury. In other cases this formality may be dispensed with. * *"

Counsel for defendant insists that this statute is mandatory and must be strictly followed.

We have repeatedly frowned upon the practice of allowing special prosecutors to supersede the duly elected county attorney in the prosecution of a criminal case. Perry v. State, 84 Okla. Cr. 211, 181 P. 2d 280; Cole v. State, 83 Okla. Cr. 254, 175 P. 2d 376. This court has held that after the county attorney had read the information to the jury he failed to state that defendant entered a plea of not guilty was error but not reversible, where the trial court in his instructions to the jury stated that defendant had entered a plea of not guilty, which puts in issue all essential allegations of the information. In this connection the record shows that the trial court in the instant case instructed the jury by reading to them all of the allegations of the information, including the contents of the chattel mortgage, and informed the jury that defendant had entered his plea of not guilty to the information and that the burden of proof was upon the state to prove the allegations set forth in the information beyond a reasonable doubt.

We have come to the conclusion that the statute above quoted authorizing the clerk or the county attorney to read the information and state the plea of defendant to the jury was directory and not mandatory. The essential thing involved in the prosecution was for the jury to be advised in a proper manner of the charges against the accused so that they might understand the issues of the case. By statute the Legislature has directed that this duty be performed

by the prosecuting attorney or the court clerk, but it does not necessarily mean that one employed specially to assist in the prosecution was accordingly barred from making the opening statement, which included a reading of the information and stating of the plea to the jury. We have never attempted to specifically outline the duties of a special prosecutor. He works at all times under the direction and supervision of the duly elected county attorney and is subject to all the rules which govern the conduct of the county attorney.

In the case of John C. Winston Co. v. Vaughan, D. C. Okla., 11 F. Supp 954, 960, the court held:

"Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is merely a matter of form. Where the directions of a statute are given merely with a view of the proper and orderly conduct of business, or relate to some immaterial matter, concerning convenience rather than substance, it is generally regarded as directory. Where no substantial rights depend on the statute, or the particular provision thereof, no injury can result from ignoring it. However, where a statute relates to matters of substance, it is generally construed as mandatory, as where such provisions are essential to the validity of the act or proceeding."

There is one other matter that should be discussed. At the conclusion of the evidence of the state, counsel for defendant demurred to the evidence and moved for an instructed verdict of not guilty. The record discloses the following occurred:

"By The Court: Let it show that the demurrer to the evidence will be sustained. Accordingly, the jury will be directed to return a verdict of not guilty. Will you prepare a form of verdict. Gentlemen of the jury, in connection with this case, a demurrer to the evidence has been sustained and accordingly I am advising you under the law you go to your jury room and return a verdict into court of not guilty as to this defendant. Now, that is not binding on you. If, under that statement you don't agree to that you, after you have elected a foreman, come back into court and so say and we will proceed with the lawsuit. Any kind of verdict that I suggest would not be binding on you. But under his demurrer and under his motion I am advising you to do that."

A form of verdict was then given to the jury and they retired to the jury-room. A short time later the jury returned to the courtroom, and upon an inquiry being made as to whether they had arrived at a verdict, the foreman stated that they had and handed to the court a verdict finding the defendant guilty as charged in the information. After this verdict was reached the court directed that the jury be seated in the jury box and stated that the trial would proceed. He then told counsel for defendant to make his opening statement for the defense. Counsel for defendant excepted to the verdict and waived an opening statement and rested his case without offering evidence. Counsel for defendant then again moved the court at the close of all the evidence to instruct the jury to return a verdict of not guilty for the reason that there was not sufficient evidence to show that the crime charged in the information had been committed, which motion was overruled.

The trial court evidently concluded, after hearing the argument of counsel at the conclusion of the state's evidence, that the evidence was insufficient to sustain a conviction, and he gave an instruction to the jury which followed the provisions of the statute. 22 O. S. 1941 § 850. In the case of Ex parte Zeligson, 47 Okla. Cr. 45, 287 P. 731, it is held:

"In the trial of a criminal case after the evidence of either side is closed, if the court deems the evidence insufficient to warrant a conviction, it may advise the jury to acquit the defendant, but the jury are not bound thereby, and may, notwithstanding such advice, return a verdict of conviction or may report

a disagreement, and, in case they report a disagreement and are discharged because unable to agree, such state of facts does not constitute former jeopardy."

From what we have hereinabove stated, it is apparent that the court erred when he sustained the motion for an instructed verdict presented by counsel for defendant. Fortunately for the state, the jury under the provisions of the statute chose not to follow the advice of the trial court and returned a verdict of guilty. Evidently the trial court, after deliberating over the matter between the time he sustained the motion for an instructed verdict and the time when the defendant again presented his motion for an instructed verdict of not guilty after conclusion of all the evidence, determined that he had erred in the first instance, and accordingly he refused to instruct the jury to return a verdict of not guilty. He then properly submitted the issues to the jury for their determination.

There was apparently some confusion in the courtroom when the jury refused to follow the court's instruction at the close of the state's case. If the trial court had been correct in giving the instruction to the jury this court would now enter its order dismissing the case and discharging the defendant. But since the evidence was sufficient to sustain the conviction, and the trial court later acted properly in refusing to discharge the defendant, we find that the defendant may not now complain of these irregularities in the proceedings as they did not prejudice him in the least. If anything, they should have been an aid to him in the deliberations of the jury. But it was so apparent to the jury that the defendant had gained the confidence of the doctor and had imposed upon him and defrauded him out of thousands of dollars of his life's savings that they could not and did not return a verdict of not guilty. The judgment is affirmed.

BRETT, P. J., not participating.

POWELL, J., concurs.