**Bobby Earl WINTERS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–236.**

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1976.

Rehearing Denied Jan. 30, 1976.

Mac Oyler, Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The Appellant, Bobby Earl Winters, hereinafter referred to as defendant was charged, tried before a jury and convicted in the District Court of Oklahoma County for the crime of Unlawful Distribution of Marihuana. Punishment was assessed at a term of seven (7) years in the custody and control of the Department of Corrections of the State of Oklahoma and a fine of five thousand dollars ($5,000). From a judgment and sentence in conformance with the verdict the defendant has perfected his timely appeal.

A determination of the merits of the assignments of error raised by the defendant does not require a detailed recital of the facts. Suffice it to say that on the 8th day of January, 1974, an agent of the Oklahoma Bureau of Investigation, through an informer, arranged the purchase of approximately 20 pounds of marihuana from the defendant. Upon the delivery of a substance by the defendant to the agent, the agent arrested the defendant.

Prior to the introduction of testimony of the State's expert witness an in camera hearing was held wherein the expert witnesses for both the State and the defense testified concerning the identity of the substance. Ms. Ann Reed, a forensic chemist employed by the Oklahoma State Bureau of Investigation testified that she received the substance from the arresting officer and performed certain tests on random samples from each bag. The first test was microscopic examination which consisted of viewing the sample under a stereo mi-

croscope and looking for the microscopic characteristics of marihuana. This revealed the samples to have cystolith hairs, some seeds and a warty construction on the leaf fragments. Each was consistent with marihuana. The second examination was a chemical test for the presence of tetrahydrocannabinol (THC) known as the Duquenois-Levine test. The test was positive for THC and consistent with marihuana since THC is present in marihuana. The third test was a thin layer chromatography test which is also a chemical test for the presence of THC. The test was positive for THC and consistent with marihuana. It was her opinion that the substance tested was marihuana and that the technical name for the substance was *cannabis sativa*. In response to questions by the trial court Ms. Reed stated that the crime laboratory recognized only one species of cannabis, *cannabis sativa*. She further testified that if tests did not reflect the presence of THC she would report negative for marihuana.

As a portion of the in camera hearing, the defense then called Dr. Richard Evan Schultes, Professor of Natural Sciences and Director of the Botanical Museum at Harvard University. Dr. Schultes explained the binomial classification of plants used by botanists. The first name is the genus or genetic name, in this case cannabis. The second name is the species name, in this case *sativa*. The binomial is extremely specific and is tied in with a type specimen filed away in one of the large botanical institutions. Dr. Schultes explained that monotypic means one unit. If a genus is monotypic then it has one species as opposed to a polytypic genus which has more than one species. Dr. Schultes went on to explain that in his opinion there are three species of cannabis: *cannabis sativa, cannabis indica,* and *cannabis ruderalis.* He further testified that from his point of view, if marihuana were defined as *cannabis sativa L.* the definition would not include *cannabis ruderalis* or *cannabis indica.*

After examining the substance which had been introduced into evidence Schultes stated that it was cannabis but he could not tell the species because the material was very dry and heavily fragmented. On cross-examination Schultes testified that it was the consensus of all botanists in the United States who had recently looked into the matter that cannabis was polytypic. He admitted, having testified some fifteen years earlier that "It seems there is only one species of marihuana and even experts are unable to tell where it is grown." After studying cannabis his opinion evolved and changed. He further stated that THC is present in all dried cannabis, therefore making it impossible to distinguish chemically between one dried species and another. He further stated that THC was found in no other genus but cannabis. In response to a question by the trial court Schultes testified that there are a number of American botanists that accept as a scientific fact that cannabis is polytypic. There are other botanists who still accept cannabis as monotypic and these classify cannabis as *cannabis sativa.*

The defense then called Dr. George J. Goodman, a taxonomic botanist at the University of Oklahoma, who testified that it was his opinion that cannabis was polytypic. He further testified that he started doing independent study and research on cannabis approximately one year ago and that his opinion as to polytypic cannabis stemmed from said research.

In response to questions by the trial court Dr. Goodman related that he was previously of the opinion that cannabis was monotypic. He came to his own scientific conclusion that cannabis was polytypic less than a year prior to his testimony. Up until that time, as far as he was then concerned, the term *cannabis sativa* would have included all cannabis. He further stated that in September of 1971 it would have been the general consensus of the scientists and lay persons in Oklahoma that *cannabis sativa* included all marihuana.

As a result of the in camera hearing, the trial court held, as a matter of law, as follows:

"It is therefore my opinion that the state does not have the burden of proof to show beyond a reasonable doubt that Marihuana was of the species sativa L. It is sufficient that the state prove beyond a reasonable doubt that the substance is Marihuana and contains the active ingredient known as tetrahydrocannabinol.

It is further my opinion that the proffered evidence of the defendant as to the different species of the plant Cannabis is immaterial to the issues of this case. Marihuana is Marihuana and Marihuana by any other name is Marihuana under the law of this state. This evidence will therefore not be submitted to the jury for their consideration. I will instruct the jury that all evidence offered or alluded to as to the species of Cannabis will be disregarded by them and the case will be submitted to the jury under instructions consistent with this opinion."

The testimony of Ms. Reed before the jury was essentially the same as her testimony before the trial court. The State then rested.

The defendant then called Dr. Schultes as his first witness. The State objected and the objection was sustained by the trial court. The defendant then made an offer of proof that if Dr. Schultes were called as a witness his testimony would be exactly as he had testified during the in camera hearing. The State objected to the offer of proof and the objection was sustained for the trial court's reasons set out above. The defendant then called Dr. Goodman, made the same offer of proof and the State's objection was sustained. The defendant then rested.

■ The defendant's first two assignments of error contend that the State failed to prove that the substance in question was the species of cannabis known as *cannabis sativa L.*, therefore failing to prove a material element of the crime charged, and that the trial court erred in excluding the testimony of Dr. Schultes and Dr. Goodman and further erred in refusing to allow defense counsel to cross-examine Ms. Reed concerning the various species of cannabis.

Marihuana is defined by 63 O.S. § 2–101(19) as follows:

"Marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds or resin, but shall not include the mature stalks of such plant, . . . ."

The State argues that cannabis is monotypic with the sole species being known as *cannabis sativa L.* Therefore all environmental varieties, varieties known by their geographic origin, whether they be known as *cannabis indica, cannabis ruderalis, cannabis mexicana,* Mexican hemp or Indian hemp, are varieties of the single species legally known as *cannabis sativa L.*

The defense on the other hand urges that the genus cannabis has three distinct genetic species, only one of which is *cannabis sativa L.,* a botanical name of very specific scientific meaning. In support of the polytypic argument the defendant cites the prior Oklahoma statutory definitions of marihuana which were in force prior to the adoption of the Uniform Controlled Dangerous Substances Act in 1971 for the proposition that the Oklahoma Legislature has traditionally recognized cannabis to be polytypic.

63 O.S.1961, § 451 reads essentially as follows, to-wit:

"It shall be unlawful for any person, . . . to plant . . ., or to have in his or their possession Marihuana, botanically known as Cannabis Sativa, Cannabis Indica, commonly called Indian Hemp, Mexican Hemp, Marihuana, Muggles Mooter, or any drug or prepa-

ration made from any species or variety of the botanical genus Cannabis . . . ."

63 O.S.1961, § 466(a)(2) reads in pertinent part as follows:

" 'Regulated Drugs' defined—Special instructions—Instructions of law enforcement personnel.—(a) The words 'regulated drugs' as used by this Act, shall mean and include the following drugs, all as defined by the laws of this State: [Footnote Omitted]

(2) Marihuana (Cannabis Sativa, Cannabis Indica, or any drug or preparation made from any species or variety of the botanical genus Cannabis or any compound, derivative or preparation thereof)."

It is our opinion that a literal reading of Section 451 and Section 466, now both repealed, does not indicate a legislative recognition of more than one botanical species of cannabis. It indicates only a legislative intent to list all names for marihuana, whether known by its street name or for its geographic origin.

In *United States v. Gaines,* 489 F.2d 690 (5th Cir. 1974) it was held that *cannabis indica* is included within the federal statutory definition of marihuana. The relevant federal definition of marihuana was to the effect that "marihuana" meant all parts of the plant *cannabis sativa L.* In support of its opinion the Court cited *United States v. Moore,* 446 F.2d 448 (3rd Cir. 1971) and *United States v. Rothberg,* 480 F.2d 534 (2nd Cir. 1973). In *Rothberg,* supra, the Court held that although there is some growing botanical opinion that cannabis is polytypic there is no question that the lawmakers, the general public, and the overwhelming scientific opinion considered that there was only one species of marihuana. The court further held that whether this is scientifically exact or not, the federal statute provided at the time of the offense a sufficient description of what was intended to be prohibited to give no-

tice to all of the illegality of the appellant's actions.

12 C.J.S. Cannabis, pp. 1111–1112 defines cannabis as follows:

"A genus of herbs, the type of the family Cannabinaceae, having as *the only known species cannabis sativa* . . . ." (emphasis added)

See also *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, wherein the Supreme Court of the United States seems also to recognize that there is only one species of marihuana.

Dr. Goodman during his in camera testimony stated that in 1971 it was his opinion and the opinion of most scientists and lay persons in Oklahoma that cannabis was monotypic, the only species being *cannabis sativa L.* Even Dr. Schultes testified that his opinion has changed over the years and it has only been recently that he had recognized cannabis as being polytypic. It is therefore our opinion that it was the legislative intent to include all varieties of the plant cannabis under the scientific name *cannabis sativa L.* when it adopted Section 2–101(19) in 1971. Said statutory definition provided the defendant in the instant case with a sufficient description of what was intended to be prohibited as to give the defendant notice of the illegality of his purported actions. To hold otherwise would be to allow botanists to make an illegal act legal by reclassification. To allow same would be absurd.

■ In the instant case the State submitted sufficient evidence to prove that the substance obtained was marihuana, known scientifically and now legally as *cannabis sativa L.*

■ The defendant further complains that the trial court denied him due process of law by refusing to allow Dr. Schultes and Dr. Goodman to testify concerning the various species of cannabis and by further refusing to allow defense counsel to cross-examine the State's forensic chemist con-

cerning her knowledge of the various species. The record reflects that defense counsel in his offer of proof concerning the testimony of both Dr. Schultes and Dr. Goodman stated that their testimony would be identical to the testimony given during the in camera hearing. That testimony concerned only their opinion as to whether cannabis was polytypic. It further appears from the record that the defendant was allowed great leeway in cross-examining the State's forensic chemist concerning her knowledge of and her ability to perform the chemical tests upon the substance. Therefore, the only testimony that did not go to the jury was that concerning the species of cannabis. Such testimony, for the reasons set out above, was immaterial to the issues to be determined by the jury.

■ It is therefore the opinion of this Court that the term *"cannabis sativa L."* used in defining marihuana in Section 2–101(19) of the Uniform Controlled Dangerous Substances Act includes all forms, varieties, and species, heretofore or hereinafter classified, of the plant genus cannabis. Once the State proves that the substance in question is a proscribed portion of the plant cannabis and further proves that the substance tests positive for tetrahydrocannabinol (THC) then it has met its burden of proof. The defendant's first and second assignments of error are without merit.

■ The defendant's third assignment of error urges that the trial court's statements to the jury throughout the trial constituted an expression of the trial court's view concerning the merits of the case and the weight of the evidence. An examination of the record reveals that the trial court made an extraordinary effort to advise the jury at all stages of the trial that the trial court would make a determination as a matter of law concerning whether or not the multiple species defense was available to the defendant. We find nothing in the conduct of the trial court which prejudiced a right of the defendant. In *Hol-*

*comb v. State,* 95 Okl.Cr. 55, 239 P.2d 806, this Court held that a trial court cannot legally indicate its opinion either expressly or impliedly, intentionally or otherwise, as to the credibility of a witness or as to the truth of any fact and issue. The matter of fact finding must be left entirely to the jury without suggestion or leading by the trial court. We agree with this statement of the law. However, in the instant case, the trial court did not indicate its opinion concerning the facts to be determined by the jury or the credibility of any particular witness. This Court agrees with the defendant when he states that the trial court took away his multiple specie defense. However, this did not prejudice a right of the defendant since under Oklahoma law the multiple specie defense is not available. The defendant's third assignment of error is without merit.

The defendant next contends that the improper conduct of the prosecuting attorney deprived the defendant of a fair and impartial trial. We thoroughly read the transcript of the trial proceedings and the very lengthy brief of the defendant and it is our opinion that he received a fair and impartial trial although it was vigorously contested. We find no action of the prosecutor which would require modification or reversal and the defendant's fourth assignment is without merit.

■ The defendant's fifth assignment of error urges that the failure of the trial court to submit defendant's requested instructions along with the trial court's submission of its instructions constituted fundamental error. We do not agree.

The defendant's requested instructions concerned the multiple species defense discussed above. To have submitted same would have been error. The instructions submitted by the trial court when considered as a whole, are a fair and full exposition of the law and are not misleading or contradictory. *Stone v. State,* Okl.Cr., 442 P.2d 519.

Although the trial court did not give an instruction containing the exact statutory definition of marihuana as set out in § 2–101(19), the trial court did state that marihuana was a controlled dangerous substance and that cannabis was commonly known as marihuana. The jury was further instructed that the State must prove that the marihuana alleged to have been distributed by the defendant to the agent contained the chemical known as tetrahydrocannabinol. As THC is found only in the proscribed portions of cannabis the instruction was sufficient. Although the above is not erroneous, it would have been best for the trial court to have given the statutory definition of marihuana and further stating that *"cannabis sativa L."* includes all forms, varieties and species of the plant genus cannabis.

The defendant's last assignment of error argues that the proscription of cannabis is violative of due process and equal protection of the law and is an unwarranted extension of the police power. Again we disagree.

The power of the Legislature to protect society under the police power is clear. *Couch v. State,* 71 Okl.Cr. 223, 110 P.2d 613. The proscription of the possession or distribution of marihuana is an appropriate application of that power by the Legislature. As is stated in *Doyle v. State,* Okl.Cr., 511 P.2d 1133, the threat of the misuse of drugs to the people of this State is obvious. At present there is compelling evidence that the non-medical use of marihuana is detrimental to the public health, safety and welfare. Therefore the proscription of marihuana is a constitutional exercise of the police power and the defendant's last proposition is without merit.

It is apparent from the record that the defendant received a fair and impartial trial by jury. No fundamental right was prejudiced and the judgment and sentence appealed from should be and the same is hereby *affirmed.*

BRETT, P. J., and BUSSEY, J., concur.