**Kerry CROW, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–593.**

Court of Criminal Appeals of Oklahoma.

June 17, 1976.

David L. Cummins, Myers & Cummins, Hollis, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Harold T. Garvin, Jr., Duncan, for appellee.

## MEMORANDUM OPINION

BLISS, Judge:

Appellant, Kerry Crow, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Jefferson County, Case No. CRF–74–72, for the offense of Unlawful Sale of Marihuana, in violation of 63 O.S.1971, § 2–401, ¶ B 2. His punishment was fixed by jury at a term of two (2) years' imprisonment, and he was sentenced in accordance therewith. From this judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness at trial was Arthur Linville who testified that he was employed with the Oklahoma State Bureau of Investigation and had been involved in drug investigations since 1972. During

this time he had worked as an undercover agent and also had taught drug identification classes to the Oklahoma Highway Patrol. On October 27, 1974, he was stationed in Lawton and on that date he had occasion to travel to Temple, Oklahoma, in Jefferson County, accompanied by Ms. Ann Wilcoxson who was employed with the Caddo County Sheriff's Office. Agent Wilkerson, agent in charge of the Lawton office of the Oklahoma Bureau of Investigation, provided surveillance from another vehicle, this being the normal procedure. Upon their arrival in Temple, they proceeded to the residence of Yancy Freeman and Joe Sims, both of whom were under investigation. Thereafter the four, the witness, Ms. Wilcoxson, Freeman and Sims, drove around town for about 30 minutes and then proceeded to Waurika, Oklahoma, pursuant to Sims direction, for a possible drug purchase at 214 S.E.3rd Street, the defendant's residence. Upon arrival at this residence Sims entered and then exited in a short period of time, followed by the defendant. They both then got into the witness' car, who then drove, pursuant to the defendant's direction, to Circle Drive in Waurika. The defendant went up to the front door of the residence but returned in less than a minute. Thereafter, the group proceeded back to defendant's residence where they stayed for approximately 30 minutes. Then, at defendant's direction, they all proceeded to a farmhouse in Jefferson County where the defendant alone entered the house and returned with a plastic baggie which contained a green leafy substance. Agent Linville further testified that he gave the defendant a ten dollar bill and that the defendant returned to the farmhouse. During this time he placed the baggie in the trunk of his vehicle. He then took the defendant home and then proceeded back to Lawton where he and Ms. Wilcoxson initialed and dated the bag. Upon being shown State's Exhibit No. 2, he identified it as the bag which he had received from the defendant on October 27, 1974, and he testified that this bag was submitted to the Oklahoma State Bureau of Investigation Laboratory in Lawton on the 27th of October under lab number L74716. He identified State's Exhibit No. 1 as the evidence envelope in which State's Exhibit No. 2 had been submitted to the Oklahoma State Bureau of Investigation Laboratory. Pursuant to charges being filed against the defendant, agent Linville, accompanied by agent Kelson, arrested the defendant on the 19th or 20th of November at the defendant's residence. After the defendant's arrest, the defendant was told that if he would cooperate as a confidential informer the District Attorney would be made aware of that fact for consideration as to the disposition of the defendant's case.

The State's next witness was James R. Wilkerson who testified that he was investigative operations coordinator for the Oklahoma State Bureau of Investigation and that on the 27th of October, 1974, he was agent in charge of the Southwest Regional Office in Lawton, and on that day he maintained surveillance for agent Linville. He further testified that on that evening at approximately 11:00 p. m. he followed Linville's car to Circle Drive and later back to 214 S.E.3rd Street, the defendant's residence. At that time he observed Linville, accompanied by Ms. Wilcoxson and two people, exit the defendant's residence, enter a car and proceed to a farmhouse south of Waurika. He testified that he next saw Linville in Temple and then at his residence in Lawton, where Linville and agent Wilkerson initialed a baggie containing a green leafy substance which he thereafter identified to be State's Exhibit No. 2.

Ann Wilcoxson testified that on the 24th of October, 1974, she was employed as Deputy Sheriff of Jefferson County and that on that evening she had occasion to see Linville, Yancy Freeman and Joe Sims. Her testimony essentially corroborated agent Linville's testimony in relation to the events which transpired on the evening of the 24th of October, 1974.

William J. Caveny testified that he was a forensic chemist for the Oklahoma State Bureau of Investigation and identified State's Exhibit No. 1 as the evidence envelope which had been submitted to the Lawton laboratory for analysis. He identified State's Exhibit No. 2 as the baggie containing a green leafy substance which he removed from State's Exhibit No. 1 and on which he performed various chemical tests. From the results of the tests he concluded that the substance was marihuana. The State then rested.

Harry Joe Sims testified that on the 27th of October, 1974, he had occasion to see agent Linville and Ms. Wilcoxson who inquired of him if he had knowledge of where they could purchase some marihuana. He told them "there wasn't nothing in Temple . . . and they could come down here and see if there was anything down here in Waurika." He told them of a man named Max who might have knowledge of where they might purchase some marihuana, but when they could not find Max they proceeded to the defendant's residence to see if the defendant knew the whereabouts of Max. The witness asked the defendant if he had any marihuana and the defendant replied that he did not. The witness then asked the defendant if he knew of any marihuana for sale. Thus, the defendant accompanied them, at Linville's insistence, into the country to a location where the defendant made a purchase of a bag of marihuana for Linville.

Jim Seay testified that he was at the defendant's residence on the 20th of November, 1974, at the same time that agent Linville along with another individual visited the defendant. Seay testified that he called the defendant into the kitchen and told him that he knew the two individuals in the living room to be "narcs" because he had seen them on television. Thereafter, Linville and the other man left but returned shortly thereafter, kicked in the door with guns drawn and arrested the defendant.

Lela Fay Ellis testified that the defendant had a reputation in the community as a law-abiding citizen.

Yancy Lee Freeman's testimony essentially corroborated that of Harry Joe Sims.

George Goodman testified that he was a botany professor at the University of Oklahoma. He further testified that botanists now recognize that there are three species of marihuana, cannabis sativa, cannabis indica and cannabis ruderalis. Upon being shown State's Exhibit No. 2, he testified that, assuming the green leafy substance to be of the genus cannabis, it was impossible to determine the species of the sample.

The defendant then took the stand to testify in his own behalf and stated that on the 27th of October, 1974, he had occasion to see Linville and Wilcoxson. He stated that they had wanted to purchase some marihuana and that they had asked him if he knew of anyone who would sell it to them. The defendant stated that he suggested going to a house on Circle Drive but upon finding no one at home, they returned to defendant's house. They continued to express their desire to buy marihuana and he told them of another person, whom he did not know very well but who might have some marihuana, and he gave them directions to his house. However, Linville insisted that since he was unfamiliar with the area the defendant should accompany them to that person's house. Thereafter, they proceeded to the individual's house where the defendant purchased a baggie of marihuana for $10.00 for Linville. He testified that he received no money from the sale of marihuana. His testimony of the events surrounding his arrest essentially corroborated that of Jim Seay. On cross-examination the defendant testified that he did not smoke marihuana in his house that evening with Linville, Sims, Wilcoxson and Freeman.

In rebuttal for the State agent Linville testified that while in the defendant's

house on the evening in question the defendant produced cigarette papers and rolled a cigarette from a substance which appeared to be marihuana. He testified that he simulated the smoking of marihuana with the group.

In further rebuttal for the State, Wilcoxson's testimony essentially corroborated agent Linville's rebuttal testimony.

On further rebuttal for the State, John William Kelson testified that he was employed with the Oklahoma State Bureau of Investigation and that he assisted in the arrest of the defendant. His testimony of the events surrounding the arrest conflicted with the events surrounding the arrest as outlined by Jim Seay's testimony and the testimony of the defendant.

The State then rested.

■ The defendant's first assignment of error apparently contends that there does not exist any compelling governmental or state interest to justify the existence of criminal sanctions against the personal use or non-coercive distribution of marihuana. Such a contention is patently frivolous.

■ In the second assignment of error the defendant asserts that this Court has recently determined that "under Oklahoma law the multiple specie defense is not available." *Winters v. State,* Okl.Cr., 545 P.2d 786 (1976). The defendant urges our reconsideration and requests that *Winters v. State,* supra, should be withdrawn. We are not persuaded by the defendant's argument and we find no reason to deviate from our decision in *Winters v. State,* supra. For this reason we reject the defendant's second assignment of error.

The defendant's third assignment of error asserts that certain evidence of another crime involving marihuana was admitted at trial and was prejudicial and constitutes

reversible error. The defendant alludes to several instances [1] of testimony which he contends to be proof of offenses other than the one for which he was charged, and, thus, by the admission of such evidence the defendant was denied a fair and impartial trial.

■ A cursory examination of the transcript pages alluded to by the defendant reveals that no objections are reflected on the following pages: 69, 73, 168, 169, 171, 184, 187, 199, 200, 235, 248, 258, 265, 266 and 279. After a careful examination of these particular transcript pages, we are of the opinion that no error occurred which was jurisdictional or fundamental in character and as such any assertion of error relating to those pages is waived. *Lewellyn v. State,* Okl.Cr., 489 P.2d 511 (1971); *Davis v. State,* Okl.Cr., 514 P.2d 1195 (1973); and, *Towning v. State,* Okl.Cr., 521 P.2d 415 (1974).

■ We also note that on page 167 of the trial transcript there was an objection to a propounded question which was subsequently sustained and did not relate to the defendant. For this reason we find nothing upon which to predicate error. See, *Carson v. State,* Okl.Cr., 529 P.2d 499 (1974). Also, in reference to transcript page 198, the assertion of error is without merit as that page reflects that the trial court itself interjected an objection and again the question propounded did not involve the defendant. See, *Carson v. State,* supra.

■ The remaining references to the trial transcript, 101, 252, 253, 254, 259, 260, 262, 263, 274 and 275, essentially pertain to testimony concerning the smoking of marihuana at the defendant's house on the evening in question. The only part of this testimony occurring during direct examina-

---

1. The defendant fails to specify the particular testimony which he now labels "prejudicial" but merely refers to the pages of the transcript of the trial proceedings where he alleges such prejudicial testimony is reflected. The pages to which he refers are as follows: 69, 73, 101, 167, 168, 169, 171, 184, 187, 198, 199, 200, 245, 248, 252, 253, 254, 258, 259, 260, 262, 263, 265, 266, 274, 275 and 279. He contends that these pages reflect some 27 references to the defendant's use and possession of marihuana and such constitutes improper introduction of evidence of other crimes and thus prejudicial error.

tion is reflected on page 101, which in part states:

"Q. Now, during this trip from Circle Drive back to Mr. Crow's residence, was there any drug related conversation between you and Mr. Crow?

"A. Yes, sir.

"Q. Okay. Could you tell us what that was?

"A. Mr. Crow said, 'let's go back to my house, I do not have any lids to sell, but I might have a little bit, I could roll some numbers—(Interrupted)'

"MR. MYERS: Objection, Your Honor.

"THE COURT: Objection overruled."

We need not decide whether or not this testimony was properly admitted as an exception to the general rule enunciated in *Moulton v. State,* Okl.Cr., 476 P.2d 366 (1970), for the reason that if the admission of such testimony were error, under the facts of this case, it was harmless error. See, 20 O.S.1971, § 3001, and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ The remaining references to the trial transcript relate to testimony introduced by the State in rebuttal. The admission of evidence in rebuttal is a matter addressed to the sound discretion of the trial court and absent abuse of such discretion the conviction will not be reversed. See, *Schneider v. State,* Okl.Cr., 538 P.2d 1088 (1975). We further note the admission of such testimony was proper to prove the defendant's predisposition to commit the crime charged, rebutting the defense of entrapment which was proposed by the defendant's testimony. See, *Watson v. State,* Okl.Cr., 382 P.2d 449 (1963).

Defendant, in his fourth assignment of error, urges that the defense of entrapment was established as a matter of law when the State's evidence showed that the Oklahoma State Bureau of Investigation agents requested that the defendant sell them marihuana and the defendant declined; whereafter at the agents' request the defendant accompanied them to an individu-al's house where the defendant did subsequently purchase marihuana for the agents.

In *Shouquette v. State,* 25 Okl.Cr. 169, 219 P. 727 (1923), this Court stated:

"Ordinarily, it is not against public policy for officers to set a trap for one suspected of planning the commission of a crime, and, if he commits the crime, even though aided or encouraged by the officer who laid the trap, the fact that he was so entrapped will be no defense. . . ."

■ The record in the instant case indicates that the agents merely furnished the opportunity for the defendant to commit the crime, with the defendant already possessing the requisite criminal intent. The evidence failing to establish entrapment as a matter of law, the trial court properly submitted the issue of entrapment to the jury, who chose not to believe the defendant. See, *Kissick v. State,* Okl.Cr., 504 P.2d 889 (1973). For this reason we find the defendant's fourth assignment of error to be without merit.

■ In the defendant's fifth assignment of error he alleges that a great portion of this assignment is a continuance of the fourth assignment of error and, further, he contends that the procuring agent defense should have been available to him. We are of the opinion that our recent decision in *Harwood v. State,* Okl.Cr., 543 P.2d 761 (1975), is dispositive of this contention.

■ In the defendant's final assignment of error, he again refers to the numerous instances of improper inferences and evidence admitted in the course of the trial. This assignment of error is unsupported by citation of authority and is improperly before this Court. See, *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969).

For all the above and foregoing reasons the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

BRETT, P. J., concurs in results.

BUSSEY, J., concurs.