**Charles Victor FETTER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–298.**

Court of Criminal Appeals of Oklahoma.

July 26, 1979.

Ainslie Perrault, Jr., Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Charles Victor Fetter, hereinafter referred to as defendant, was charged conjointly with Kathy Bea Blaylock in the District Court, Tulsa County, Case No. CRF–76–2908, with the offense of Conspiracy to Commit Murder, in violation of 21 O.S.1971, § 421. He was tried and found guilty by the jury who fixed his punishment at two (2) years' imprisonment and a fine of One Thousand ($1,000.00) Dollars. From said judgment and sentence, the defendant has perfected an appeal to this Court.

The information alleged that defendant and Kathy Bea Blaylock (not involved in

this appeal), between July 15, 1976, and July 21, 1976, in Tulsa County, entered into a conspiracy to murder Jimmie C. Toney and that Blaylock flew from Tulsa, Oklahoma, to New Orleans, Louisiana, on July 16, 1976, to hire Willie Lloyd Grafton to arrange the murder. Grafton testified for the State that he was a special agent for the Bureau of Alcohol, Tobacco and Firearms Division of the United States Treasury Department, and during the period from January, 1976, through the time in question he was working undercover, posing as a member of organized crime. In this role, he had been in contact with the defendant who, together with the proposed victim Toney, operated an abortion clinic in Tulsa. Blaylock operated a referral service for the clinic and was supposedly the adopted daughter of the defendant.

Agent Grafton testified that Blaylock telephoned him on July 15, 1976, at his home in Slidell, Louisiana, from Tulsa, Oklahoma, stating she and the defendant had a serious problem. The next day Blaylock boarded a Continental Airlines airplane in Tulsa and flew to the New Orleans International Airport where she was met, as agreed, by Grafton and another agent who was working undercover. She related that the defendant would soon begin serving a one year sentence for income tax evasion, and she and the defendant were fearful that Toney would take over the clinic's business during the defendant's absence. Blaylock and agent Grafton discussed the manner in which Toney was to be killed and agreed upon the price to be paid Grafton. After the meeting, which lasted approximately three hours, Blaylock flew back to Tulsa, having agreed to mail the agent the money, a photograph of Toney, and a map of the area where the killing was to occur.

On July 17, 1976, defendant called Grafton and reiterated the reason it was necessary to eliminate Toney and stated Blaylock had been speaking for him, and that the two were getting the material together to mail to Grafton. Telephone conversations between the agent and the defendant on July 18 and July 19 were recorded and played to the jury. And on July 21, the agent received a call from the defendant who stated he and Blaylock had been working to compile the material to be furnished Grafton.

Agent Grafton related that on August 5 he called Blaylock who informed him that the defendant, then in prison, felt something had gone wrong and desired to talk with him. The agent visited defendant on August 12 at the federal correctional institution in Springfield, Missouri. The defendant expressed concern at not having met Grafton's boss and informed him he now wanted to kill Toney himself. Grafton stated on cross-examination that he had never been furnished with the money, map or photograph.

The State called Phillip L. Melancon and August Palumbo, both special agents for the Bureau of Alcohol, Tobacco and Firearms in New Orleans, Louisiana. Melancon was the agent who accompanied agent Grafton to meet Blaylock when she flew to New Orleans. Melancon substantiated Grafton's testimony concerning the meeting on July 16. Agent Palumbo related he posed as an organized crime boss in the New Orleans area during a telephone conversation with defendant. Next, William Robert Cloud, administrator of the clinic testified that Blaylock had been expelled from the operating room by Toney in March, 1976, and thereafter both Blaylock and defendant made threats to get rid of Toney.

Finally, Toney was called as a witness for the State, and he related that Cloud had informed him of the threats. The State rested.

The defendant did not testify in his own behalf or offer any evidence.

█ Defendant's first assignment of error is that the evidence was insufficient to establish a conspiracy to commit murder. We find the statutory elements of a conspiracy, as charged herein, are (1) an agreement to commit the crime charged and (2) an act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose. See 21 O.S.1971, § 421 and

§ 423. Whether an agreement has been entered into between the defendant and Blaylock was a jury question. *Pearson v. State,* Okl.Cr., 556 P.2d 1025 (1976).

█ The crime of conspiracy, by its very nature, is a crime clothed in secrecy and is very seldom proved by direct evidence. Thus, the existence of a conspiracy need not be proved by direct evidence, but proof of circumstances from which the existence of a conspiracy may be fairly inferred is sufficient. *Pearson v. State,* supra. And the law is well established in this state that where two or more persons have acted in concert in the commission of a crime, the acts and declarations of one co-actor in pursuance of the common act or design are admissible against any other co-actor on trial for the crime, *Dooley v. State,* Okl.Cr., 484 P.2d 1324 (1971); and the conspirators are responsible for all that is said and done pursuant to the conspiracy by their co-conspirators until its purpose has been fully accomplished, *Fox v. State,* Okl. Cr., 524 P.2d 60 (1974).

█ We find there was such competent evidence from which the jury could find a pre-existing agreement between the defendant and Blaylock to kill Toney and to find that Blaylock's trip to New Orleans was an overt act in furtherance of the object of the conspiracy. *Wright v. State,* Okl.Cr., 535 P.2d 315 (1975). And this Court will not interfere with the jury's findings, since it is the exclusive province of the jury to weigh the evidence and determine the facts. *Campbell v. State,* Okl.Cr., 546 P.2d 276 (1976).

█ The defendant's next assignment of error is that the statements he made to agent Grafton while in prison and his failure to provide the agent with the requested items constituted a withdrawal from the conspiracy and that he should have been able to avoid guilt by reason thereof. The jury found that an unlawful conspiratorial agreement to kill Toney had been entered into by defendant and Blaylock and that her trip to New Orleans was an overt act in furtherance thereof, thus making the crime compete at that point. The jury was properly instructed that abandonment is a defense only if the conspirator withdraws prior to the commission of an overt act. Therefore, the defendant's statements while in prison, and the fact that the agent had never received the requested material was immaterial and we therefore find that this assignment of error is without merit.

██ The defendant's final assignment of error concerns the admission into evidence of the testimony pertaining to a prior offense committed by the defendant. Agent Grafton was permitted to testify over objection by the defense that Blaylock told him, during her visit to New Orleans, that defendant was going to the penitentiary for about one year for conviction of income tax evasion. This Court has consistently held that when an accused is on trial for one offense he is to be convicted, if at all, by evidence showing his guilt of that offense alone and evidence showing, or tending to show, his commission of other unrelated offenses is inadmissible. However, an exception to this rule is that evidence of other crimes may be admissible if they go to show (1) motive, (2) intent, (3) absence of accident, (4) identity of the accused, and (5) common scheme or plan. *Dooley v. State,* supra. We are of the opinion that the testimony complained of was admissible under the exception as tending to show motive and intent. And, in addition, the court properly instructed the jury as to evidence regarding other offenses. Therefore, we find that this assignment of error is without merit.

For all the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

CORNISH, P. J. and BRETT, J., concur.