**Orville Glenn RUSSELL, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–339.**

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1982.

---

1. For a case reaching the same conclusion on similar facts, see, *United States v. Hollman*, 541 F.2d 196 (8th Cir.1976).

Jesse L. Leeds, Muskogee, for appellant.

Jan Eric Cartwright Atty. Gen., David W. Lee, Asst. Atty. Gen., Chief, Criminal Division State of Okl. Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The events from which this case arose occurred in Tahlequah, Oklahoma, in May of 1978. On the evening of May 22, 1978, an undercover agent with the Federal Bureau of Alcohol, Tobacco and Firearms, Loyd Cobb, and an informant, Robert "Chunky" McFarlin, contacted Grover Stanley Monholland for the supposed purpose of obtaining Monholland's help in locating a pickup for Agent Cobb to purchase. During the course of their conversations, Agent Cobb led Monholland to believe that he, Cobb, was an explosives expert in dire need of money. Monholland subsequently informed Agent Cobb that if Cobb were not a "law abiding citizen," Monholland might have some "work" for Cobb to perform. Agent Cobb inquired as to the nature of this "work" and was informed that Monholland wanted a pickup which belonged to an Oklahoma district judge destroyed by explosives.

Monholland informed Agent Cobb that another person, Orville Glenn Russell, hereinafter called the appellant, was to participate in arranging such a plan. Monholland and Agent Cobb drove to the appellant's home to discuss the matter with him. Agent Cobb produced a substance from the tool box in his pickup which he represented to Monholland and the appellant to be an explosive substance. Monholland and the appellant both asked Agent Cobb if he would sell them some of the substance. Cobb replied that he did not sell it, because he did his own "work."

The three men then discussed killing the district judge by destroying his pickup with explosives when he was in it. Monholland and the appellant accompanied Agent Cobb in his pickup and directed him to the district judge's residence in Tahlequah to point out the pickup they desired to have destroyed.

Agent Cobb informed Monholland and the appellant his fee for destroying the pickup would be one thousand dollars ($1,000). The appellant and Monholland agreed to that price, and made plans to drive to Muskogee the next day to obtain the money. They instructed Agent Cobb to meet with them the next evening, at which time they would possibly have the one thousand dollars.

Agent Cobb returned to Monholland's home the next evening, (May 23, 1978). He and Monholland went in search of the appellant. During the course of their travels, Monholland purchased gasoline for Agent Cobb's pickup, proposed numerous alternatives to compensate Agent Cobb for "jobs" Monholland wanted done, and offered a rifle to Agent Cobb as a down payment or bonus for destroying the district judge's pickup.

Agent Cobb and Monholland located the appellant outside a pool hall, at which time the appellant informed them he had gone to Muskogee in search of a way to raise the one thousand dollars, but had failed to raise it. Monholland and the appellant then discussed possible means of obtaining the money and expressed a desire to maintain contact with Agent Cobb so that the destruction of the pickup might nonetheless be accomplished. Agent Cobb informed the two men that he had made two trips from Muskogee to Tahlequah, and that he needed money. The appellant gave Monholland twenty dollars to give Agent Cobb, which he did.

At that point, other Federal Agents with the Bureau of Alcohol, Tobacco and Firearms, who had been monitoring and recording the conversations over the previous two days by way of a transmitter carried by Agent Cobb, arrested the three men. Agent Cobb was "arrested" to maintain his undercover identity.

The appellant and Monholland were tried in Federal Court on four counts stemming from the circumstances. Count I charged that from April 1, 1978, through May 23, 1978, the two men "willfully and knowingly entered into an agreement, combination and conspiracy to commit the offense of willfully and maliciously destroying a vehicle by explosives, a pickup truck, the property of State District Judge Lynn Burris of Cherokee County, Oklahoma, which vehicle was used regularly as part of an activity affecting interstate commerce, contrary to 18 U.S.C. § 844(i) and 18 U.S.C. § 2." *United States v. Monholland,* 607 F.2d 1311 (10th Cir.1979) at 1312.

Count II charged that the two men willfully and knowingly attempted to damage and destroy, by means of an explosive, Judge Burris' pickup on May 23, 1978. *Monholland,* supra.

Count III charged that on May 22, the appellant attempted to receive in interstate commerce an explosive, defined by 18 U.S.C. § 844(j), with knowledge that the explosive would be used to kill Judge Burris in violation of 18 U.S.C. § 844(d). *Monholland,* supra.

Count IV charged Monholland in the same language as Count III, above. *Monholland,* supra.

The appellant and Monholland were convicted on all counts. Their convictions were reversed and remanded with instructions to dismiss by the Federal Tenth Circuit Court of Appeals. *Monholland,* supra. The Tenth Circuit held that the federal courts had no jurisdiction over Counts I and II, because the pickup allegedly targeted for destruction was not sufficiently connected with interstate commerce. On rehearing concerning Counts III and IV, the Tenth Circuit reversed the case and remanded it with instructions to dismiss on the grounds of insufficiency of the evidence.

Subsequent to the dismissal of the case by the Tenth Circuit Court of Appeals, the appellant and Monholland were tried conjointly, and convicted in the District Court of Cherokee County, Oklahoma, for Conspiracy to Place an Explosive Substance Against a Motor Vehicle, in violation of 21 O.S.1981, § 1767.1. The jury assessed a penalty of five thousand dollars and ten years' imprisonment on each. The appellant Russell has perfected a timely appeal to this Court.

■ The appellant's initial argument is that the Tenth Circuit's disposition in this case bars retrial of the matter in the Oklahoma State courts by way of double jeopardy, res judicata and collateral estoppel.

In dealing with this issue, the Supreme Court of the United States has held that an acquittal in federal court does not bar subsequent prosecution in state courts on charges arising out of the same acts.[1] *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); see also, *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922).

However, 21 O.S.1981, § 25, states:

Whenever it appears upon the trial that the accused has already been acquitted or convicted upon any criminal prosecution under the laws of another state, government or country, founded upon the act or omission in respect to which he is upon trial, this is a sufficient defense.

The appellant's conviction in federal court and subsequent reversal by the Tenth Circuit Court of Appeals of counts three and four constituted an acquittal under the laws of "another government" within the meaning of the statute. *Burks,* supra; *Green,* supra. The question before us, then, is whether the federal and subsequent State prosecutions were founded upon the same offense or "acts" as provided in the statute.

The case of *Hubbell v. State,* 585 P.2d 369 (Okl.Cr.1978) (reversed on other grounds)

1. The reversal by the Tenth Circuit on the grounds of insufficient evidence as to counts three and four was tantamount to an acquittal, and jeopardy attached for purposes of further federal prosecution. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Green v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

elucidates the issue. In *Hubbell,* the defendant was charged in both federal and state court for crimes arising from her actions concerning loans she procured from two banks. The defendant was charged in federal court with making false loan applications, and was prosecuted in Oklahoma state court for unlawful removal of encumbered property. It was pointed out in the opinion that the federal and state statutes under which the defendant was prosecuted differed substantially from one another. Thus, the majority of this Court held that, even though some of the evidence necessary to prove the federal charge was also necessary to prove the state charge and vice versa, the federal court prosecution did not bar subsequent state prosecution under 21 O.S.1981, § 25. The majority noted that the evidence necessary to prove the federal charges would not be sufficient to prove the state charges, and vice versa.

Applying the teaching of *Hubbell* to the instant case, we note initially that the federal and state statutes under which the appellant was charged differ substantially.

The federal statutes under which the appellant was charged are as follows:

18 U.S.C. § 844(d)

(d) Whoever transports or receives, or attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be imprisoned for not more than ten years, or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results, shall be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title [18 USCS § 34].

18 U.S.C. § 844(i)

(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building,

vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title [18 USCS § 34].

18 U.S.C. § 2

(a) Whoever commits an offense against the United States or aids, abets, counsel, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The Oklahoma Statute under which the appellant was tried in state court is in pertinent part:

21 O.S.1981, § 1767.1

A. Any person who shall willfully and maliciously commit any of the following acts shall be deemed guilty of a felony:

1. Any person who places in, upon, under, against or near to any building, car, aircraft, motor or other vehicle, vessel or structure, any gunpowder, dynamite, bomb, any explosive substance, or incendiary device, with unlawful intent to destroy, throw down, or injure, in whole or in part, such property of another, or conspires, aids, counsels or procures the destruction of any building or structure, public or private, or any car, aircraft, motor or other vehicle, vessel or structure, shall be guilty of a felony; or

2. Any person who places in, upon, under, against or near to any building, car, aircraft, motor or other vehicle, vessel or structure, any gunpowder, dynamite, bomb, or any explosive substance, with intent to destroy, throw down or injure the whole or any part thereof,

under circumstances that, if such intent were accomplished, human life or safety would be endangered thereby, shall be guilty of a felony; or . . .

We note that count one of the federal charge alleged conspiracy similar to that charged under 21 O.S.1981, § 1767.1. However, that federal statute prohibition reaches only those vehicles used in interstate commerce. Thus, the language of *Hubbell,* supra, directly applies. The evidence necessary to prove the charge under 21 O.S.1981, § 1767.1 would be wholly insufficient to prove 18 U.S.C. § 844(i), because of the interstate commerce factor.[2]

Likewise, counts two, three and four fall under the *Hubbell* doctrine. The evidence necessary to prove the *attempt* to destroy the pickup in count two, and that needed to prove the attempts to receive in interstate commerce an explosive alleged in counts three and four would not sustain a conviction under 21 O.S.1981, § 1767.1.

■ We are not persuaded that the concepts of res judicata and collateral estoppel interjected by the appellant affect the outcome of this issue. In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court said that collateral estoppel is an "awkward phrase" which "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 90 S.Ct. at 1194. The same constitutional and statutory considerations concerning double jeopardy apply to these concepts as well. It is clear the same parties were not involved in the state and federal prosecutions.

Accordingly, we hold that there was no constitutional or statutory bar to the trial of the appellant by the State of Oklahoma subsequent to the dismissal of the case by the Tenth Circuit.

■ The appellant's second assignment of error is that a change of venue should have been granted. We note initially that the appellant failed to cite authority for his contention. We have held numerous times we will not search the books for counsel. *Sandefur v. State,* 461 P.2d 954 (Okl.Cr. 1969). We note secondly that appellant failed to demonstrate any prejudice resulting from the failure to change venue. Absent a demonstration of prejudice, we cannot say a change of venue should have been granted. See, *Tomlinson v. State,* 554 P.2d 798 (Okl.Cr.1976). We note thirdly that the appellant failed to exhaust all peremptory challenges during voir dire. A defendant in a criminal case will not be heard to complain of juror bias on appeal if he failed to do so. *Carpitcher v. State,* 586 P.2d 75 (Okl.Cr.1978). The trial court did not abuse its discretion in denying the motion.

■ The appellant's seventh assignment of error concerns the indictment filed in this case. He argues the indictment was duplicitous; that it was not set out in separate counts; that it did not allege a sufficient overt act; and that the State's evidence did not sustain it.

The indictment alleges in pertinent part that:

ORVILLE GLENN RUSSELL and GROVER STANLEY MONHOLLAND, did in Cherokee County, State of Oklahoma, on or about the 22nd and 23rd day of May, 1978, commit the crime of CONSPIRACY TO PLACE AN EXPLOSIVE SUBSTANCE AGAINST A MOTOR VEHICLE (21 O.S.1767.1), in the manner and form as follows:

1. That the said ORVILLE GLENN RUSSELL and GROVER STANLEY MONHOLLAND unlawfully, wilfully, feloniously and with intent to destroy, did enter into an agreement, combination and conspiracy with each other to destroy, with an explosive substance, a certain motor vehicle, to-wit: a 1969 blue Ford pickup truck, 1978 Oklahoma License No. 494231, owned by Associate District Judge Lynn Burris.

---

**2.** This fact is further evidenced by the Tenth Circuit's dismissal of counts one and two on jurisdictional grounds, stemming from the government's inability to prove Judge Burris' pickup was involved in interstate commerce as the statute required.

2. That the object of the conspiracy was to destroy said pickup truck at a time when Judge Burris was inside of such.

3. That in order to effect and in furtherance of the object of said conspiracy, the defendants committed the following overt acts:

a. On May 22, 1978, defendants hired a person known to them as Loyd to do the actual bombing.

b. On the same date defendants took Loyd to the residence of Judge Lynn Burris in Tahlequah, Oklahoma, and pointed out the Judge's pickup truck and told Loyd that enough explosive should be used so as to insure the total destruction of the vehicle and the death of the judge.

c. Defendants entered into a contract with Loyd which called for him to be paid $1,000.00 for killing Judge Burris.

d. Loyd was told to place the charge on the pickup truck on a weekday as someone else other than the judge might drive the vehicle on the weekends.

e. On May 23, 1978, defendant RUSSELL provided the person identified as Loyd $20.00 for expense money as downpayment on the $1,000.00.

None of the appellant's arguments concerning the indictment have merit. The indictment adequately and specifically set forth the elements of conspiracy to place explosive against a motor vehicle contained in 21 O.S.1981, § 1767.1. It was not duplicitous, neither was there need to allege separate counts. The indictment was worded in such a manner that the appellant knew what offense with which he was charged, and did not stand in peril of double jeopardy. 22 O.S.1981, § 401; *Holloway v. State,* 602 P.2d 218 (Okl.Cr.1979). The circumstances alleged to prove the element of overt acts were likewise sufficient.

The evidence presented at trial was sufficient to support the indictment for the reasons discussed below in the appellant's sufficiency of the evidence contention. We shall not reiterate them here.

██ The appellant's fifth assignment of error is that the State presented inadmissible evidence of other crimes at trial. He specifically complains of various court records exhibited by the State. The records consisted of old arrest and search warrants issued against the appellant and Monholland by the judge whose pickup they conspired to destroy.

The prosecution properly filed a notice of intent to introduce evidence of other crimes well in advance of the ten-day deadline established by this Court in *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). The prosecution additionally filed a supplemental notice of intent to introduce evidence of other crimes more than ten days before trial. Thus, we cannot say the appellant was not forewarned.

We likewise agree with the State that the evidence was relevant in the present case. The evidence of the appellant's prior contacts with the judge went directly to prove the appellant's motive, intent, and preparation and plan. 12 O.S.1981, § 2404(B); *Burks* supra. The recorded conversation between the appellant, his co-conspirator and Agent Cobb further illustrate this point:

MONHOLLAND: Yeah. We don't want him (the district judge) to know nothing about it. His thrillin' fuckin' days are over as ... far as I'm concerned.

AGENT COBB: You all must really be pissed off at him.

APPELLANT (RUSSELL): Well, you'd be kindly pissed off if they tried to frame ya and everthing else. Damn near put ya in the pen ...

* * * * * *

APPELLANT (RUSSELL): Just want it (the explosive) to go off when the ole boy (Judge Burris) starts his damn truck ... turns his lights on or somethin' ... drive off.

AGENT COBB: You want for sure to get him"

APPELLANT (RUSSELL): Yeah.

MONHOLLAND: God damn right ...

It is plain that the evidence of the other crimes was relevant, and had probative value which outweighed the prejudicial effect. 12 O.S.1981, § 2403; *Burks,* supra.

Lastly, we note that the trial court properly instructed the jury at the close of all the evidence that the evidence of the other crimes was admissible for a limited purpose. *Burks,* supra. There was no error.

■ The appellant also maintains that the trial court committed error by admitting a waiver of *Miranda* rights form he had signed, and by admitting testimony that the appellant exercised his right to remain silent during interrogation. We note, however, that the waiver evidence was laid as a foundation for the subsequent presentation of statements made by the appellant and Monholland to the ATF agents during interrogation. It was incumbent upon the prosecution to demonstrate that the appellant had been advised of his rights and understood them prior to interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ The appellant's sixth allegation of error is that Agent Cobb interjected an evidentiary harpoon during cross-examination at trial. The remark complained of was elicited by the appellant's attorney:

Q. (By appellant's attorney): Was that for the purpose of his being acquainted with Monholland and that you were going to reach and get to O.G. Russell through him?

A. (Agent Cobb): The purpose of McFarlin (the informant) being there was to introduce me to Grover Monholland.

Q. Okay. And did you know at that time that Grover Monholland knew O.G. Russell?

A. Yes, sir.

Q. All right. And were you actually wanting Monholland to take you into the presence of and involve O.G. Russell in this matter?

A. I was wanting to go catch whoever was associated with Mr. Monholland if the information was correct that they were trying to acquire explosives to blow somebody up with.

The appellant's attorney immediately objected to the answer to his question on hearsay and evidentiary harpoon grounds.

The trial court overruled the objection, stating that Agent Cobb was merely responding to the question posed to him by the appellant's attorney.

We agree with the trial court's ruling. Admittedly, Agent Cobb's answer interjected hearsay evidence that would not otherwise have been admissible. However, he did so in a good faith effort to answer the question. We cannot say that Agent Cobb's statement was an evidentiary harpoon as defined in *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.1980). In addition, we do not believe the appellant was prejudiced by the statement.

■ The appellant's fourth assignment of error is that Agent Cobb's conduct constituted entrapment as a matter of law. We disagree.

Agent Cobb, having been informed by Robert McFarlin that Monholland and the appellant were predisposed to do violence upon the intended victim in this case, held himself out to be a person with a dangerous skill in need of money. The recorded conversation between Agent Cobb, Monholland and the appellant reveal that Monholland and the appellant initiated the illegal proposal. Soon after they met, and in response to Agent Cobb's assertions that he needed money and wanted to find odd jobs to do, Monholland stated, "Well, I might have a deal for ya later on if you're not a law abiding citizen."

Monholland subsequently informed Agent Cobb that the appellant was also to be in on the conspiracy, and accompanied Agent Cobb to the appellant's home. Monholland spoke with the appellant in private, and then introduced the appellant to Agent Cobb. After a small amount of superficial conversation, the discussion between the three men turned to the plot to destroy the judge's pickup. Agent Cobb displayed a substance to the men which he represented to be seismic gel. The appellant inquired how much Agent Cobb wanted to sell it for. Agent Cobb declined the offer to sell the substance. He informed the appellant that Monholland had mentioned a "job", and further explained that he did his own

"work" so nothing "came back behind" him. The appellant subsequently stated that, "I'd like to see that son of a bitch take a ride. That way I was going to do it was the reason I was going to buy it (the seismic gel). Do it myself . . ." The appellant and Monholland then accompanied Agent Cobb for the purpose of directing him to the judge's residence, where the pickup to be destroyed was parked.

The record thus amply indicates that the appellant was predisposed to commit the crime. Agent Cobb's actions of providing a means by which the appellant could carry his predisposition into the conspiracy stage did not constitute entrapment as a matter of law. See *Crow v. State,* 551 P.2d 279 (Okl.Cr.1976).

▮ The question of entrapment is a matter left to the trier of fact. *Escobedo v. State,* 545 P.2d 210 (Okl.Cr.1976). The trial court properly instructed the jury on the law of entrapment. The jury obviously chose not to believe the appellant's contention. We see no reason to interfere with that decision. *Crow,* supra.

Lastly, we address the appellant's contention that the evidence presented at trial was insufficient to sustain the verdict. The appellant relies entirely on the Tenth Circuit's dismissal of the federal prosecution, on the basis of insufficient evidence.

Initially, we point out that the federal statutes under which the appellant was prosecuted are different from the statute under which he was tried in Oklahoma State Court. Although the Tenth Circuit's opinion did contain language to the effect that no conspiracy existed,[3] that opinion focused upon the federal prosecutor's failure to prove sufficient overt facts to constitute an *attempt. Monholland,* supra.

▮ The appellant was charged with *conspiracy* in Oklahoma State prosecution. The elements of conspiracy are: 1) the agreement by two or more persons to commit a crime; and 2) an overt act committed by one or more of the co-conspirators in furtherance of the conspiracy. *Fetter v. State,* 598 P.2d 262 (Okl.Cr.1979); 21 O.S. 1981, §§ 421, 423. The question whether an actual agreement was made is one to be resolved by the trier of fact. If there is reasonable evidence upon which the trier of fact may base a finding that an agreement existed, this Court will not disturb the decision on appeal. *Fetter,* supra; *Blaylock v. State,* 598 P.2d 251 (Okl.Cr.1979).

▮ We find there was ample evidence to support the jury's finding that an agreement existed between Monholland and the appellant to pay Agent Cobb to place an explosive substance against Judge Burris' pickup. The tapes introduced at trial are replete with emphatic exclamations by both the appellant and his co-conspirator that they wanted the judge's pickup blown up, that they would pay Agent Cobb one thousand dollars to do it, and that one or both of them would travel to Muskogee the next day to acquire the money.

Likewise, we find that the appellant and Monholland committed sufficient overt acts in furtherance of the agreement to complete the crime of conspiracy. The overt acts, as alleged in the information consisted of accompanying Agent Cobb and directing him to the location of the pickup; driving to Muskogee in attempt to obtain the money to pay Cobb; and payment to Agent Cobb of a twenty dollar bill.

In *Blaylock v. State,* supra, the defendant took a trip to New Orleans, Louisiana, from Oklahoma City to discuss details of a proposed killing. We held that Blaylock's trip sufficiently constituted an overt act in furtherance of the prior agreement to kill the intended victim. In *Pearson v. State,* 556 P.2d 1025 (Okl.Cr.1976), we held that the defendant's actions of supplying fifty dol-

---

**3.** We do not find the Tenth Circuit Court's ruling on these issues inconsistent with ours. The first two counts of the federal indictment were dismissed on jurisdictional basis. Although the court's discussion of counts three and four contained some dicta to the effect that no conspiracy existed, we need only note that the court was addressing facts, issues and statutes somewhat different from ours. See proposition one, infra. The general dicta in the Tenth Circuit's opinion concerning the evidence of the existence of a conspiracy is inapplicable.

lars and the names, addresses, work habits and car tag numbers of intended victims to an intended killer constituted overt acts in furtherance of a previous agreement to kill said victims. In *Wright v. State,* 535 P.2d 315 (Okl.Cr.1975), the inspection and approval of a proposed murder weapon; attendance and discussion by the defendant after two meetings at a co-conspirator's apartment where reasons for the desired death of the intended victim were given; and the payment by the defendant's co-conspirators of a quantity of drugs to the intended killer (an undercover agent) were held to be sufficient overt acts in furtherance of the agreement to constitute conspiracy.

In view of the foregoing precedent and facts, we find the appellant's actions were sufficient to complete the crime of conspiracy to destroy a motor vehicle with explosives. The judgment and sentence is AFFIRMED.

BRETT, P.J., and CORNISH, J., concur.